# UNITED STATES DISTRICT COURT

<u>NORTHERN</u> DISTRICT OF <u>ILLINOIS, EASTERN DIVISION</u>

UNITED STATES OF AMERICA

v.

MARCOS HERNANDEZ

<u>UNDER SEAL</u>

CRIMINAL COMPLAINT

CASE NUMBER: **10 CR 551**

MAGISTRATE JUDGE SCHENKIER

FILED
6-28-10 NF
JUN 28 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

I, Special Agent Craig Henderson, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about September 13, 2006, at Chicago, in the <u>Northern</u> District of <u>Illinois</u>, <u>Eastern Division</u>, MARCOS HERNANDEZ defendant herein,

while working in his official capacity as a CPD patrol officer, intentionally accessed and caused to be accessed a Chicago Police Department computer, specifically a mobile computer, and exceeded his authorized access, and thereby obtained information from a department or agency of the United States, namely, the NCIC database which is housed at the Federal Bureau of Investigation's Criminal Justice Information Services Division in Clarksburg, West Virginia;

in violation of Title <u>18</u> United States Code, Sections <u>1030(a)(2)(B)</u>.

I further state that I am a <u>Special Agent of the Federal Bureau of Investigation</u> and that this complaint is based on the following facts:

   **See attached affidavit**

Continued on the attached sheet and made a part hereof: <u>X</u> Yes ___ No.

Signature of Complainant

Sworn to before me and subscribed in my presence,

June 28, 2010            at          Chicago, Illinois
Date                                 City and State

SIDNEY I. SCHENKIER, U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer                Signature of Judicial Officer

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

## AFFIDAVIT

I, Craig Henderson, being duly sworn, depose and state:

1. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") for approximately sixteen years, having been assigned to the Chicago Division for twelve and a half years, and the FBI Laboratory Division for three and a half years. While assigned to the Chicago Division, I have been part of an Organized Crime Squad and a White Collar Crime/ Public Corruption squad, and have investigated violations of federal statutes, including wire fraud, mail fraud, money laundering and extortion.

2. I, along with FBI Special Agents and other task force officers, have been conducting an investigation regarding violations of Title 18, United States Code, Section 1951 and 1030. I am familiar with the facts and information contained in this Affidavit, which is based on my own personal observations, witness interviews, interviews of cooperating witnesses, review of consensually recorded conversations, review of calls intercepted pursuant to Court order, analysis and review of documents and records, and from discussions with, among others, FBI special agents and Chicago Police Department ("CPD") - Internal Affairs Division ("IAD") investigators.

3. This Affidavit is made in support of a criminal complaint

charging MARCOS HERNANDEZ ("HERNANDEZ") with violation of Title 18, United States Code, Sections 1030(a)(2)(B), in that MARCOS HERNANDEZ, while working in his official capacity as a CPD patrol officer, intentionally accessed and caused to be accessed a Chicago Police Department computer, specifically a mobile computer, and exceeded his authorized access, and thereby obtained information from a department or agency of the United States, namely, the NCIC database which is housed at the Federal Bureau of Investigation's Criminal Justice Information Services Division in Clarksburg, West Virginia.

4. Since this Affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe HERNANDEZ committed violations of Title 18, United States Code, Section 1030(a)(2)(B).

## I. BACKGROUND

5. FBI special agents in Chicago have been conducting an investigation into extortion by, and bribery of, CPD officers in various CPD districts within the City of Chicago, Illinois. Based on information provided by cooperating witnesses, and complaints received by the CPD-IAD, the FBI

2

learned that certain tow truck companies and their drivers operating in Chicago made bribe payments to CPD officers in return for receiving the opportunity to tow vehicles from accident scenes and collect resulting tow fees.

6. Based on information from a confidential witness ("CW1"), consensual recordings, and other investigation, it was learned that HERNANDEZ worked closely with certain tow truck operators and gave them preferential treatment at accident scenes occurring in the CPD's 14th District.[1] During times relevant to this affidavit, HERNANDEZ was assigned to the CPD's 14th District, and his regular duty assignment was beat 1411. Furthermore, investigation has shown that HERNANDEZ often contacted Tow Driver A via a cellular telephone when an accident scene occurred in the CPD 14th District in order for Tow Driver A or one of his workers to respond to the scene first.[2] In addition, HERNANDEZ provided Tow Driver A with license plate registration information for vehicles involved in accidents.

---

[1] The CPD 14th District is also known as the Shakespeare District, and its station is located at 2150 N. California, Chicago, Illinois. The CPD boundaries for the 14th District are roughly: Belmont Avenue on the north, north branch of the Chicago River on the east, Division Street on the south and Central Park Avenue on the west.

[2] Tow Driver A is a tow truck operator who operated a business exclusively in the CPD 14th district. During the investigation, Tow Driver A received telephone calls from HERNANDEZ in which HERNANDEZ directed him to respond to accident scenes in the CPD 14th District that were assigned to HERNANDEZ.

3

7. According to CPD general rules and regulations, specifically Rule 41 and General Order 98-07-04A, CPD officers are prohibited from accessing CPD computers and databases to obtain information, such as license plate information, for purposes unrelated to their official duties, such as providing that information to civilians.

## II. NCIC and CPD Regulations

8. The FBI of the United States Department of Justice is an agency of the United States which is primarily responsible for investigating violations of federal criminal law and, in connection therewith, is responsible for acquiring, collecting, classifying and preserving on a computer database criminal records, including criminal history, outstanding warrants, and vehicle and license plate information. The FBI maintains the computerized criminal records system known as the National Crime Information Center ("NCIC").

9. According to Title 28 of the Code of Federal Regulations Part 20, the NCIC is the computerized information system, which includes telecommunications lines and any message switching facilities that are authorized by law, regulation, or policy approved by the Attorney General of the United States to link local, state, tribal, federal, foreign, and international criminal justice agencies for the purpose of exchanging NCIC-related

4

information.

10. The FBI is authorized to exchange NCIC records and information with, and solely for the official use of, authorized officials of the federal government and state and local governments. These records are stored and maintained by the FBI on a computerized data system at the FBI's Criminal Justice Information Services Division in Clarksburg, West Virginia, and are exchanged with authorized law enforcement agencies via computer transmissions to computer and data terminals throughout the country. A lawful function of the FBI is to maintain the integrity and confidentiality of the NCIC system.

11. The CPD does not maintain a direct link through its mobile data terminals to NCIC. Computer inquiries conducted by members of the CPD are initially sent to the CPD local computer or "Hot Desk." The inquiry is then sent to the Illinois Secretary of State computer where it is then redirected to NCIC in Clarksburg, West Virginia, through a State of Illinois gateway. After an inquiry is received at NCIC, a response is sent back through the Illinois Secretary of State computer to the inquiring CPD officer.

12. Chicago Police Department General Order 98-07-04A defines the CPD policy governing access and the dissemination of information or data

stored in CPD computerized information systems.[3] According to General Order 98-07-04A, information contained within CPD's computerized information systems will be disseminated in accordance with CPD policy and in compliance with all federal, state and local laws. Access to information contained in the NCIC database is restricted to official use only. Pursuant to CPD General Order 98-07-04A, CPD officers are not permitted to obtain information from CPD's computerized information systems unless that information is necessary to execution of their duties and assignment. Pursuant to CPD General Order 98-07-04A, information contained in the NCIC database must not be divulged to anyone outside of an authorized agency except as required by law or in performance of official duties. Access to information is restricted to official police business. Access of information for personal or other reasons is strictly prohibited.

13. According to CPD General Orders, Department members have no expectation of privacy in the use of Department computers or related equipment. Pursuant to Chicago Police Department General Order 98-07-04A(VI)(C), members of the CPD are issued a specific Login ID in order to access information through the CPD's computerized information systems.

---

[3] The requirements of General Order 98-07-04A that are set forth herein were in effect during and prior to September 2006.

Any member who accesses information through the Department's computerized information system is accountable for the appropriate use and disposal of the information.

14. Every CPD officer is bound by and furnished with a copy of the Rules and Regulations which govern the CPD. Rule 41 restricts CPD officers from disseminating, releasing, altering, defacing or removing any CPD record or information concerning police matters except as provided by CPD orders.

### III. HERNANDEZ Provided Law Enforcement Database Information about Vehicle License Plates to Tow Driver A on September 13, 2006

15. During the course of this investigation, the government applied for and received authorization to intercept wire communications to and from Tow Driver A's cellular telephone number (312) 217-6645 ("Target Telephone 1") pursuant to Orders signed Chief Judge James F. Holderman on July 24, 2006 and August 18, 2006; signed by Acting Chief Judge David H. Coar on September 15, 2006; and signed by Chief Judge James F. Holderman on October 13, 2006. Unless otherwise noted, the calls described herein were intercepted pursuant to these Court Orders.[4]

---

[4] At various points in the Affidavit, I will offer my interpretations of certain intercepted conversations or recorded meetings in brackets and otherwise. My interpretations of these conversations are based on my knowledge of the investigation to date and review of prior interceptions, the contents and context of the conversations, prior and subsequent conversations, the results of physical surveillance, conversations with other officers and agents, and my experience and familiarity with these types of investigations generally. Moreover, the voice

7

16. On or about September 13, 2006, at approximately 9:02 a.m. (call 5241), Tow Driver A, using Target Telephone 1, received an incoming telephone call from HERNANDEZ, who was using telephone number (773) 419-1411.[5] During this call, Tow Driver A and HERNANDEZ had the

---

identifications for the conversations set out below are preliminary. The identification of some individuals involved in these conversations and meetings has not yet been completed. Some of these summaries do not include references to all the topics covered during the course of the conversations. In addition, the summaries do not necessarily include references to all statements made by the speakers on the topics that are mentioned. For these recordings, I have relied on draft – not final – transcripts of conversations.

[5] The voice identification of Tow Driver A has been accomplished as follows: calls intercepted during the investigation in which Tow Driver A was one of the speakers were compared to the voice of Tow Driver A in recordings made by CW1 while agents observed CW1 meet with Tow Driver A. In addition, agents interviewed Tow Driver A on May 5, 2010 and were able to confirm their identification of the voice of Tow Driver A at that time.

The voice of HERNANDEZ was identified by Special Agent Henderson through the following means: On September 12, 2006, after an accident near the intersection of Armitage and Humboldt/Sacramento, Tow Driver A received several telephone calls from HERNANDEZ, who requested payment for a vehicle that Tow Driver A received at an accident scene at which HERNANDEZ was present. On September 12, 2006, HERNANDEZ was driving a Chicago Police Department patrol car bearing beat number 1411. From approximately 12:56 p.m. to approximately 1:40 p.m., Special Agent Henderson observed HERNANDEZ parked in a CPD patrol car bearing beat tag 1411 near the intersection of Palmer and Albany Streets, Chicago, Illinois, next to the park. At approximately 1:22 p.m. HERNANDEZ called Tow Driver A and told Tow Driver A he was tired of sitting at the park. Tow Driver A said he would be there in five minutes. At approximately 1:34 p.m. Tow Driver A arrived at the park located at Palmer and Albany streets and approached the CPD patrol car bearing beat tag 1411 at which time Tow Driver A reached into the squad car. A short time after meeting with Tow Driver A, HERNANDEZ pulled away in CPD patrol car bearing beat tag 1411. Special Agent Henderson reviewed the recorded telephone calls between HERNANDEZ and Tow Driver A from September 12, 2006, and can attest to the voices on the telephone calls as Tow Driver A and HERNANDEZ. Special Agent Henderson has compared the voice of HERNANDEZ on these calls to the other calls set forth in this affidavit and has confirmed that the

following conversation:

| | |
|---|---|
| Tow Driver A: | Hey Papi, if I give you this plate, can you run it for me quick? |
| HERNANDEZ: | Fuckin nine, nine o'clock and now you're gonna fuckin call me. I had accidents all fuckin morning. |
| Tow Driver A: | I'm tryin' to deal with one right now, dude, there's a car on top of another car, completely on top dude. |
| HERNANDEZ: | Okay Papi, where? |
| Tow Driver A: | By my house. |
| HERNANDEZ: | Oh, okay, give me the number. |
| Tow Driver A: | It's nine, nine, eight... |
| HERNANDEZ: | Nine, nine, eight... |
| Tow Driver A: | [remainder of license plate number]. It should come... |
| HERNANDEZ: | [remainder of license plate number repeated]... |
| Tow Driver A: | It should... |
| HERNANDEZ: | Okay. |
| Tow Driver A: | [remainder of license plate number repeated], it should come back to a Cadillac. |
| HERNANDEZ: | Alright, let me see. Nine, nine, eight, [remainder of license plate number] is clear locally. Let's see what else it says. A lot of bullshit accidents this morning, bro'. I only got one so far... |
| Tow Driver A: | No shit... |
| HERNANDEZ: | Yeah. |
| Tow Driver A: | Hopefully, if I get this one, you can have two. |
| HERNANDEZ: | Cool papa, this fuckin computer is running slow, let me call as soon as it comes up Papi. |
| Tow Driver A: | Alright, cool. |
| HERNANDEZ: | Alright. |
| Tow Driver A: | Alright. |

17. On or about September 13, 2006, at approximately 9:04 a.m. (call 5243), Tow Driver A, using Target Telephone 1, received an incoming

---

statements attributed to HERNANDEZ in this affidavit were in fact made by HERNANDEZ.

9

telephone call from HERNANDEZ who was using telephone number (773) 419-1411. During this call, Tow Driver A and HERNANDEZ had the following conversation:

| | |
|---|---|
| Tow Driver A: | (UI)...Papi. |
| HERNANDEZ: | Okay, it comes back to a [Individual A] [Individual A]. [Individual A's first name] with a "C". |
| Tow Driver A: | What's, what's the address? |
| HERNANDEZ: | [Individual A's address]. |
| Tow Driver A: | South [street name]? |
| HERNANDEZ: | Huh Huh, it comes back to a 2002 Cadillac four door. |
| Tow Driver A: | Right, four door. |
| HERNANDEZ: | Let me see..(UI)...let me make sure there is no different address here. Oh do da do da...And that's it, it's clear all the way around. Yeah, [Individual A's name]. [Individual A's name]. It's just [Individual A]. |
| Tow Driver A: | [Individual A]. How about if I give you another one? |
| HERNANDEZ: | Okay hang on a second, let me um...(mumbles something to himself). Damn, this motherfucker got all kind of bullshit. It might not be him though. Alright, go ahead. |
| Tow Driver A: | Eight zero eight, |
| HERNANDEZ: | Eight-O-eight? |
| Tow Driver A: | Right |
| HERNANDEZ: | That's my lottery number brother, you better play it. |
| Tow Driver A: | [Remainder of license plate]. |
| HERNANDEZ: | That's the number I've been playing for years. |
| Tow Driver A: | And it haven't hit once. |
| HERNANDEZ: | (Both laugh) But by you ringing it, you ringing it, you a "putta" bitch I'm pretty sure it will come in now. |
| Tow Driver A: | We almost had it the other day bro'. |
| HERNANDEZ: | Oh man, okay it's clear locally, eight-O-eight, [remainder of license plate number]. Let's see what else it comes up with. Who you working with? |
| Tow Driver A: | [name of another tow driver]. |
| HERNANDEZ: | Oh, okay. |
| Tow Driver A: | Dude, you should see this accident, bro'. The Cadillac... |
| HERNANDEZ: | Huh Huh. |
| Tow Driver A: | The two front tires are at, the Intrepid front bumper. The |

|  |  |
|---|---|
|  | rest of the car is on the top of the car. The rest of the car, the Cadillac is on top of the Intrepid. |
| HERNANDEZ: | Okay, it comes back to a [Individual B] [Individual B] (both laugh). [Individual B] [Individual B's last name spelled by HERNANDEZ]. |
| Tow Driver A: | Uh, uh... |
| HERNANDEZ: | And the first name is [Individual B's partial first name]. [Individual B's last name], [Individual B's first name spelled by HERNANDEZ], . . . [Individual B's first name]. |
| Tow Driver A: | (laughs). |
| HERNANDEZ: | And he lives at [Individual B's address], a ninety-nine Dodge. |
| Tow Driver A: | [Individual B's address]? |
| HERNANDEZ: | [Individual B's address numerals], [Individual B's address numerals repeated]. |
| Tow Driver A: | Okay. |
| HERNANDEZ: | [Individual B's address repeated], it's a nineteen ninety-nine Dodge, four door. |
| Tow Driver A: | (talking to someone in background) |
| HERNANDEZ: | And it's clear all the way. |
| Tow Driver A: | (talking to someone in the background) it's right here. |
| HERNANDEZ: | Okay. |
| Tow Driver A: | Alright. |
| HERNANDEZ: | Alright Papichulo (phonetic) |
| Tow Driver A: | Let me see what I can do? We'll work my magic over here. |
| HERNANDEZ: | I see, I Papi, I see, love when you talk like that. |
| Tow Driver A: | (laughs) |
| HERNANDEZ: | I'll talk to you later. |

18. An inquiry was conducted through the CPD Information Services Division as to the query conducted of Illinois license plate 998XXXX through the CPD database at approximately 9:02 a.m. on September 13, 2006. CPD records show HERNANDEZ used the CPD mobile computer assigned to HERNANDEZ on September 13, 2006 to conduct a license plate inquiry at approximately 9:02 a.m. on Illinois license plate 998XXXX. The information

11

obtained from CPD showed the vehicle to be a 2002 Cadillac and was registered to Individual A at Individual A's address in Chicago, Illinois. The name and address of Individual A matched the information provided to Tow Driver A by HERNANDEZ in the recorded call set forth above.

19. A search of CPD and Illinois State Police records relating to the above inquiry verifies that HERNANDEZ queried Illinois license plate 998XXXX on September 13, 2006. The query conducted by HERNANDEZ through the CPD HotDesk computer caused a query to be sent to the Illinois Secretary of State to check the registration on the vehicle with Illinois license plate 998XXXX. In addition, HERNANDEZ's query of license plate 998XXXX generated an inquiry of the National Crime Information Center ("NCIC") database which is operated by the FBI. NCIC provided a response which indicated that there was "no want" for Individual A, however the NCIC response did indicate a "possible hit" related to another person with the same birth date as Individual A.

20. An inquiry was conducted through the CPD Information Services Division as to the query conducted of Illinois license plate 808XXXX through the CPD database at approximately 9:04 a.m. on September 13, 2006. CPD records show HERNANDEZ used the CPD mobile computer assigned to HERNANDEZ on September 13, 2006 to conduct a license plate inquiry at

12

approximately 9:04 a.m. on Illinois 808XXXX. The information obtained from CPD showed the vehicle to be a 1999 Dodge that was registered to Individual B at Individual B's address, Chicago, Illinois. The name and address of Individual B matched the information provided to Tow Driver A by HERNANDEZ in the recorded call set forth above.

21. A search of CPD and Illinois State Police records relating to the above inquiry verifies that HERNANDEZ queried Illinois license plate 808XXXX. The query conducted by HERNANDEZ through the CPD HotDesk computer caused a query to be sent to the Illinois Secretary of State to check the registration on the vehicle with Illinois license plate 808XXXX. In addition, HERNANDEZ's query of license plate 808XXXX generated an inquiry of the NCIC database which is operated by the FBI. The NCIC response stated that there was "No NCIC Want" for Individual B.

22. An Illinois Traffic Crash Report, prepared and signed by the CPD officer assigned to beat car 2534 on September 13, 2006 at 1:45 a.m., was obtained from CPD records. The report documents a crash which occurred on September 13, 2006 at approximately 1:15 a.m. at 1239 N. Keeler, Chicago, Illinois. The vehicle designated Unit Number Two vehicle is a 2002 Cadillac that was registered to Individual A. The vehicle designated Unit Number Three vehicle is a 1999 Dodge Intrepid that was registered to Individual B.

The report stated in summary that "Unit 2 was struck with such force that caused Unit 2 to come to rest atop Unit 2." Although the report writer apparently wrote in the wrong unit number, I believe based on reviewing the report and the diagram contained therein, that Unit 2 (Cadillac) came to rest on top of the Dodge Intrepid, as described by Tow Driver A in the recorded call set forth above at paragraph 17.

23. Based on the foregoing facts, I believe there is probable cause to believe that MARCOS HERNANDEZ, while working in his official capacity as a CPD patrol officer, intentionally accessed and caused to be accessed a Chicago Police Department computer, specifically a mobile computer, and exceeded his authorized access, and thereby obtained information from a department or agency of the United States, namely, the NCIC database which is housed at the Federal Bureau of Investigation's Criminal Justice

14

Information Services Division in Clarksburg, West Virginia, in violation of Title 18, United States Code, Sections 1030(a)(2)(B).

_____
Craig Henderson, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this 28th day of June 2010.

_____
Honorable Sidney I. Schenkier
United States Magistrate Judge
Northern District of Illinois

15